**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Chief Jurist **ILYA LIVIZ** D.L.D., | ) | CASE NO. _____ |
| of National Academy for Jurists, | ) | for the |
| individually and on behalf of all others, | ) | **FOR THE PEOPLE** |
| *Plaintiffs*, | ) | by |
| v. | ) | *JURIST* **FOR JUSTICE** |
| | ) | of |
| **SUPREME COURT OF THE** | ) | **UNITED STATES OF AMERICA** |
| **UNITED STATE OF AMERICA**; | ) | |
| SUPREME JUDICIAL COURT | ) *FIRST IMPRESSION* NATIONAL CLASS-C.A. |
| OF THE COMMONWEALTH | ) FOR INTER-STATE PRACTICE OF LAW |
| OF MASSACHUSETTS; | )WITH DECLARATIVE & INJUNCTIVE RELIEF |
| SUPREME COURT OF ALABAMA; | ) |
| ALASKA SUPREME COURT; | ) I. <u>PROPERTY RIGHT & FREE SPEECH</u> |
| ARIZONA SUPREME COURT; | ) 1. CONTROL AND RIGHT TO PRIVACY OF |
| ARKANSAS SUPREME COURT; | )    PROPERTY BELONGS TO PERSONS |
| SUPREME COURT OF CALIFORNIA; | ) 2. RIGHT FROM SEARCH AND SEIZURE OF |
| COLORADO SUPREME COURT; | )    THE PROPERTY BELONGS TO PERSON |
| CONNECTICUT SUPREME COURT; | ) 3. UNLAWFUL TO INHIBIT INTERSTATE |
| DELAWARE SUPREME COURT; | )    TRANSPORTATION AND BENEFIT OF |
| FLORIDA SUPREME COURT; | )    USE OF PROPERTY TO PERSONS |
| SUPREME COURT OF GEORGIA; | ) |
| HAWAII STATE SUPREME COURT; | ) II. <u>DUE PROCESS & EQUAL PROTECTION</u> |
| IDAHO SUPREME COURT; | ) 1. AVAILABILITY FOR UNINHIBITED |
| SUPREME COURT OF ILLINOIS; | )    INTERSTATE TRANSPORTATION AND |
| SUPREME COURT OF INDIANA; | )    USE OF PROPERTY WITHOUT A FEE |
| IOWA SUPREME COURT; | )    OR COSTS FOR INDIGENT PERSONS |
| KANSAS SUPREME COURT; | ) 2. UNLAWFUL TO SEARCH NOR SEIZE |
| KENTUCKY SUPREME COURT; | )    PROPERTY WITHOUT PROBABLE CAUSE |
| LOUISIANA SUPREME COURT; | ) 3. RIGHT OF TRIAL BY JURY FOR |
| MAINE SUPREME JUDICIAL COURT; | )    PROPERTY CONTROVERSY |
| MARYLAND COURT OF APPEALS; | ) |
| MICHIGAN SUPREME COURT; | ) III. <u>CONGRESSIONAL SUPPORT</u> |
| MINNESOTA SUPREME COURT; | ) U.S. CONST. ART. IV, §§ 1, & 2 at ¶ 1. |
| SUPREME COURT OF MISSISSIPPI; | ) PRIVILEGES AND IMMUNITIES CLAUSE |
| SUPREME COURT OF MISSOURI; | ) AMENDS. I, III, IV, V, VII, VIII, IX, X, & XIV. |
| MONTANA SUPREME COURT; | ) OR COMMERCE CLAUSE OF ART. I § 8. |
| NEBRASKA SUPREME COURT; | ) FAAAA PREEMPTION AND PURSUANT |
| SUPREME COURT OF NEVADA; | ) TO FEDERAL TRADE COMMISSION ACT |
| NEW HAMPSHIRE SUPREME COURT; | ) & FAIR LABOR STANDARDS ACT OF 1983 |
| NEW JERSEY SUPREME COURT; | )WITH THE SHERMAN ACT CLARIFICATION |
| NEW MEXICO SUPREME COURT; | ) |
| NEW YORK COURT OF APPEALS; | )                                    **ACCESS TO** |
| NORTH CAROLINA SUPREME COURT; | )**WILL BOOST OUR ECONOMY & <u>JUSTICE</u>** |
| NORTH DAKOTA SUPREME COURT; | ) |

i

```
SUPREME COURT OF OHIO;            )
OKLAHOMA SUPREME COURT;           )
SUPREME COURT OF PENNSYLVANIA;)
RHODE ISLAND SUPREME COURT;       )
SOUTH CAROLINA SUPREME COURT;  )
SOUTH DAKOTA SUPREME COURT;     )
TENNESSEE SUPREME COURT;          )
TEXAS SUPREME COURT;              )
UTAH SUPREME COURT;               )
VERMONT SUPREME COURT;            )
SUPREME COURT OF VIRGINIA;        )
WASHINGTON SUPREME COURT;         )
COURTS OF WEST VIRGINIA;          )
WISCOUNSIN SUPREME COURT;         )
WYOMING SUPREME COURT;            )
                        Defendants,   )
```

לעולם לא עוד

"For Life, Liberty, and Pursuit of Happiness!"

/s/ *Chief Jurist* Ilya Liviz D.L.D.
National Academy for Jurists
Advocating for Civil Rights & Civil Liberties
LIVIZ LAW OFFICE
200 Central Street
Lowell, MA 01852
www.NAFJ.US
www.Liviz.com
ilya.liviz@gmail.com

NEURODIVERSITY IS HUMAN DIVERSITY

- Love You Mom -
(This would have been possible without your continued love, support, and pain in the neck.)

ii

## FOREWARD

"*Deprivation of a fundamental right is a matter of greatest importance because the injury alleged concerns national security with a functional equivalent of an attack on the U.S. Constitution; we all have a duty to defend - God Bless America!*"

/s/ Chief Jurist Ilya Liviz D.L.D.
National Academy for Jurists
Advocating for Civil Rights & Civil Liberties

## ACKNOWLEDGEMENT

"*Falling of the horse recently was a great reminder of how vulnerable we are; most importantly getting back on the horse may not have been possible without the support of my community and life-saving Acts promulgated by U.S. Congress - God Bless You*!" [1]

/s/ Chief Jurist Ilya Liviz D.L.D.
National Academy for Jurists
Advocating for Civil Rights & Civil Liberties

---

[1] *See e.g.*; Civil Rights Act, Rehabilitation Act, Americans with Disabilities Act, Family First Prevention Services Act, VA Mission Act, Government in the Sunshine Act, *etcetera.* (People are very lucky to have individuals like yourself advocating for them.)

**FOR THE PEOPLE SUBMISSION**
for **Justice** & **Liberty** that is **Equal** for all
**Civil Rights** in association with **Civil Liberties**
non-profit **National Academy For Jurists** production
written by Chief Jurist **Ilya Liviz D.L.D.** inspired by **True Events**
presented in **U.S. District Court** for the **District of Massachusetts**
pursuant to law of **United States Congress** and the **U.S. Constitution**
guaranteed by **Arts. I, § 8 & IV, §§ I & II** and **Amends. I, III, IV, V, IX & XIV, § I**
authorized by **49 U.S.C. Title 49 et seq.** enforced by **42 U.S.C. § 1983**
in accordance with **Fed. R. Civ. Pro**. and *Jurist's* **Core Values**
published **December 21ˢᵗ** in the year **2018** of our Lord.
**www.NAFJ.US**

| **NR**<br>Not Redacted | **The Content of This Complaint Has Not Been Evaluated Nor Subjected to Fed. R. Civ. Pro. Rule 12(b)(6) - It Is Being Forwarded For Immediate Review By Respective Attorney Generals For The States Within United States of America** | |
|---|---|---|
| Identification of minors/juveniles and other information warranting redacted as necessary pursuant to Local CM/ECF Adm. Pro. R. N. (1-5), & S., and Fed. R. Civ. P. 5.2, Fed. R. Crim. P. 49.1, and the E-Government Act of 2002, personal identifiers (PID) will be either fully or partially redacted unless they are already known to the public.  Approved for public reproduction by www.NAFJ.US | |  |

iv

# TABLE OF CONTENTS

PAR I - FEDERAL DISTRICT COURT JURISDICTION .......................................... 2

    I. SYNOPSIS ............................................................................................ 2

    II. JURISDICTION AND VENUE ............................................................ 2

    III. PRIORITY OF CASE .......................................................................... 3

    IV. SOVEREIGN & JUDICIAL IMMUNITY .......................................... 3

    V. DECLARATORY & INJUNCTIVE RELIEF ....................................... 4

    VI. STANDING AND BASIS FOR CLASS ACTION .............................. 5

PART II - CIVIL ACTION GENERAL ALLEGATIONS ................................... 5

    I. PARTIES ............................................................................................... 5

    II. INJURY TO LIVIZ ............................................................................. 6

PART III. CLASS-WIDE INJURY .................................................................... 7

    I. STATE COURTS .................................................................................. 7

        A. Summary ...................................................................................... 7

        B. Nevada ......................................................................................... 8

        C. Other States ............................................................................... 11

    II. FEDERAL COURTS ......................................................................... 12

PART IV - CONSTITUTIONAL BASIS ......................................................... 12

    I. PROPERTY RIGHT AND RIGHT TO PRIVACY ............................. 12

    II. FREEDOM OF SPEECH, EXPRESSION AND ASSOCIATION ...... 13

    III. DUE PROCESS & EQUAL PROTECTION ..................................... 15

    IV. PRIVILEGES & IMMUNITIES ....................................................... 15

    V. COMMERCE CLAUSE ..................................................................... 16

PART V - CONGRESSIONAL SUPPORT ...................................................... 17

    I. REGULATION PURSUANT TO COMMERCE POWER ................... 17

    II. NATIONAL LABOR RELATIONS ACT .......................................... 18

    II. FAIR LABOR STANDARDS AMENDMENT ACT .......................... 21

        A. Definitions ................................................................................. 21

        B. Prima Facie Evidence ............................................................... 22

        C. Protections ................................................................................. 22

    III. FAAAA .............................................................................................. 23

        A. Transportation Policy - 49 U.S.C. § 13101 ............................. 23

        B. Definitions ................................................................................. 23

    IV. FEDERAL TRADE COMMISION ACT ........................................... 25

V. SHERMAN ACT ............................................................................................................ 25

VI. CLAYTON ACT.......................................................................................................... 26

    A. Definitions .......................................................................................................... 26

    B. Law ..................................................................................................................... 26

PART V - RELIEF SOUGHT ............................................................................................ 27

  I. ALLEGATIONS APPLICABLE TO ALL COUNTS ........................................... 27

  II. COUNTS A(#); B(#); C(#)..................................................................................... 28

  III. JURY DEMAND ..................................................................................................... 31

# ACRONYMS & DEFINITIONS

| Acronym | Definition/Explanation |
| --- | --- |
| Admonish | scholarly advise or suggestion, not intended to reprove someone |
| Boom | interchangeable with "emphasis" preferred by modern American jurist. |
| Real talk | emphasis exclaimed |
| C.J.C. | Code of Judicial Conduct promulgated by SJC Rule 3:09 |
| *De lege lata* | Latin meaning for law as it is. |
| D.L.D. | Acronym of Latin expression; *De Lex Doctorate*, which translates to a law doctorate of laws, awarded by National Academy For Jurists. *See* www. NAFJ.US |
| Emphasis | bolding, italicizing, or underlining emphasis of writer |
| *Exampli gratia* | Latin term that means for example, or list. *Cf. Id est infra*. |
| *Jurist* | Legal expert in and writing of law. |
| *Id est* | Latin meaning for that is, or in other words. *Cf. Exampli gratia supra*. |
| *Liviz Judicial Immunity* doctrine | Universal application for judicial immunity invalidation five-part test: 1) repugnant to the constitution; 2) non-derivative injury independent to cause of action; 3) injury foreknown; 4) unavailability of redress to judicial injury; 5) absence of representational standing. |
| *Liviz Judicial Recusal* doctrine | Mandatory judicial recusal four-part test ("4U steps") (UUUU): 1) Unlawful; 2) Unequivocal; 3) Unavoidable; 4) Usurp |
| *Liviz State Removal* doctrine | Mandatory removal to federal court: 1) 4U steps; 2) lack of state remedy; 3) removal preserves fundamental right. |
| NAFJ | National Academy For Jurists, a privately owned non-profit authority granting the *De Lex Doctorate* ("D.L.D."); promoting strict compliance with its Core Values; advocating protection and maintenance of Civil Rights & Civil Liberties |

## PAR I - FEDERAL DISTRICT COURT JURISDICTION

### I. SYNOPSIS

1.    People stand to benefit greatly with availability of additional resources from which to chose from, and pursuant to our nation's capitalistic roots, services will be offered at competitive rates.  Most importantly, people have the right to choice of counsel, and have availability of free flowing commercial speech; "the right of the public as consumers and citizens to know about the activities of the legal profession"  *See Bates v. State Bar of Ariz.*, 433 U.S. 350, at [***820] (1977).

### II. JURISDICTION AND VENUE

2.    SCOTUS has only appellate jurisdiction on matters concerning law and fact.  *See* Art. III, in § 2, at ¶ 2.

3.    "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, [2] laws, or treaties of the United States." *See* 28 U.S.C. § 1331

4.    "The district courts  shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies..." *See* 28 U.S.C. § 1337(a)

5.    This court has authority to issue a writ if necessary to enforce jurisdiction; "... all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. *See* 28 U.S.C. § 1651.

6.    Congress exercise its commerce power to give Plaintiff ability to challenge the state program pursuant to 15 U.S.C. § 1 anti-trust law.  *See Parker v. Brown* , 317 U.S. 341 (1943).

7.    Pursuant to Unfair Labor Practice Act; "[t]he person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise ... Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of

---

[2] This action is initiated pursuant to violation of 1st, 3rd, 4th, 5th, 6th, 9th, 10th & 14th Amendments to the U.S. Constitution's for deprivation of fair and meaningful access to the court, and pursuant to Civil Rights Act.  If however, this court, *inter alia*, is not able to maintain this action pursuant to constitutional grounds, Liviz reserves the right to amend the complaint, as necessary, to enforce rights as relator pursuant to False Claims Act, or other Act of Congress. based on violations that fall under Federal Tort Act with jurisdiction under 28 U.S.C. § 1343(a)(3).

civil procedure for the district courts of the United States..." *See* 29 U.S.C., § 160(b).  See also 29 U.S.C. § 185(c).[3]

8.   Tax Anti-Injunction Act (26 U.S.C., § 7421) is inapplicable because the fees are a "penalty" and not a "tax".  *See National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012).

9.   Venue is proper in this district because multiple defendants reside in this district and because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district. *See* 28 U.S.C. § 1391(b)(l), (2).

## III. PRIORITY OF CASE

10.  "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of subsection (a)(3) or (b)(2) of section 158 of this title, such charge shall be given priority over all other cases except cases of like character in the office where it is filed or to which it is referred and cases given priority under subsection (*l*)." *See* U.S.C. § 160(m).

## IV. SOVEREIGN & JUDICIAL IMMUNITY

11.  The Complaint deals with non-judicial administrative function and does not concern adjudication of disciplinary proceedings[4]; judicial immunity does not apply. Administrative decisions such as essential functioning of the court, or admission to practice of law, without more, are not considered judicial proceedings.  *See Forrester v. White*, 484 U.S. 219 (1988).  Because the complaint deals with administration of the courts and individual rights concerning lawyers prior without review of any state judgment *Rooker-Feldman* doctrine does not apply,[5]

---

[3] This statute however requires within the district "duly authorized officers or agents are engaged in representing or acting for employee members".  *See* 29 U.S.C., § 185(c).  *Cf.* 29 U.S.C., § 160(b).

[4] Disciplinary proceedings concern a case or controversy which will require a judicial act which will be protected by judicial immunity.  *See Sparks v. Character & Fitness Committee*, 859 F. 2d 428 (6th. Cir. 1988).  *See also*, *In re Summers*, 325 U.S. 561 (1945) (Case or controversy that requires judicial adjudication will attach judicial immunity.)

[5] Cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005). "Thus, *Rooker–Feldman* applies only when the federal plaintiff both asserts as her injury legal errors or errors by the state court and seeks as her remedy relief from the state court judgment." *Vacation Village, Inc. v. Clark County*, 497 F.3d 902, 911 (9th Cir.2007) (quoting *Kougasian v. TMSL Inc.*, 359 F.3d 1136, 1140 (9th Cir.2004)).

12.  Judge is not entitled to judicial immunity when acting in enforcement capacity.  *See Supreme Court v. Consumers Union of United States*, 446 U.S. 719 (1980).

13.   Plaintiff can maintain action; "... any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  *See* 42 U.S.C. § 1983. *See also. Pulliam v. Allen*, 466 U.S. 522 (1984) ("... judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.")

14.  Rules, policy and regulation of admission to the state bar by the state's supreme court is legislative state action.  *See Hoover v. Ronwin*, 466 U.S. 558 (1984). The state party is the supreme court.  *See Bates v. State Bar of Arizona*, 433 U.S. 350, 361, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977) ("The Arizona Supreme Court is the real party in interest;  it adopted the rules, and it is the ultimate trier of fact and law in the enforcement process.").

## V. DECLARATORY & INJUNCTIVE RELIEF

15.  The court is able to take Judicial Notice pursuant to Fed. R. Evi. Rule 201(b)(2) states require additional steps without an attorney can be accused of practicing without a license. Because the states violate Liviz's rights and benefits concerning his personal property, there is case and controversy for this court to entertain availability of redress.  Practicing law is a trade among attorneys which belongs to them as private property which they rely upon in their profession. *See Bradley v. Fisher*, 80 U.S. 335 (1871) ("This is a rule of natural justice, and is as applicable to cases where a proceeding is taken to reach the right of an attorney to practice his profession as it is when the proceeding is taken to reach his real or personal property.")  lack of formality does not mean there is lack of case or controversy. *See In re Summers*, at dissent, 325 U.S. 561 (1945).

16.  Honorable Court is able to issue its Declaratory Judgment pursuant to 28 U.S.C., §§ 2201-02.

17.  Pursuant to Unfair Labor Practice Act the court; "shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter a decree enforcing, modifying and enforcing as so modified "  *See* 29 U.S.C. § 160(e).

18.  Injunctive relief preventing states from attaching fees to interstate services is pre-empted by FAAAA.  *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008).  *See* similarly *Morales v. TWA*, 504 U.S. 374 (1992).

19.  If the court asserts jurisdiction over Defendants, Clayton Act provides for injunctive relief. *See* 15 U.S.C., § 26.

20.  "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  *See* Fed. R. Civ. Pro. Rule 57.  "The court may order a speedy hearing of a declaratory judgment action." *See ibid*.

4

21.  This, court may issue the preliminary and permanent injunctive relief with notice, or temporary restraining order without notice pursuant to Fed. R. Civ. Pro. R. 65 at its earliest convenience.

## VI. STANDING AND BASIS FOR CLASS ACTION

22.  "... antitrust violations and that it will likely be "squeezed" out of the market in the foreseeable future because of defendants' actions are sufficient." *See Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc*. 754 F.2d 404 (1st. Cir. 1985).

23.  "Congress has given private citizens rights of action for injunctive relief and damages for antitrust violations without regard to the amount in controversy. 28 U. S. C. § 1337; 15 U. S. C. § 15. Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a  more powerful litigation posture." *See Hawaii v. Standard Oil Co*., 405 U.S. 251, at [*266] (1972) (Reversing district court's Summary Judgment because foresee ability of traceable injury is sufficient to show actual or threatened injury to a person.)

24.  Plaintiff brings this action on behalf of himself, and all others similarly situated, pursuant to Fed. R. Civ. Pro. Rule 23(b)(2)-(3).  The two classes are the general class of licensed attorney from ABA accredited school, and the secondary class is made up of licensed attorneys from non-ABA accredited schools.  Because this jurists fits in both categories and the injury are based on foreseeable and traceable denial to practice law, Summary Judgment is expected.

## PART II - CIVIL ACTION GENERAL ALLEGATIONS

## I. PARTIES

25.  The Plaintiff *Chief Jurist* Ilya Liviz D.L.D. ("Liviz"), is an individual and a citizen of the United States of America residing within the Middlesex County in Lowell, Massachusetts. A practicing attorney and founder of National Academy for Jurists ("NAFJ") a non-profit authority granting *De Lex Doctorate* ("D.L.D.") The Doctorate of Law for *jurists* for justice (accreditation application submission pending) with passion and goal to pursue justice through enforcement of civil rights, civil liberties, and equal protection of the laws for all.

26.  The Defendant Supreme Court of The United States ("SCOTUS")is the highest court of the federal judiciary, and is located in the Supreme Building in Washington, D.C.

27.  Defendant, Supreme Judicial Court of Massachusetts ("SJC") is the state's highest court sitting at the John Adams Courthouse, One Pemberton Square, Boston, MA 02108.

28.  Defendants, include all of the states' highest courts collectively ("Defendants"): Supreme Court of Alabama; Alaska Supreme Court; Arizona Supreme Court; Arkansas Supreme

Court; Supreme Court of California; Colorado Supreme Court; Connecticut Supreme Court; Delaware Supreme Court; Florida Supreme Court; Supreme Court of Georgia; Hawaii State Supreme Court; Idaho Supreme Court; Supreme Court of Illinois; Supreme Court of Indiana; Iowa Supreme Court; Kansas Supreme Court; Kentucky Supreme Court; Louisiana Supreme Court; Maine Supreme Judicial Court; Maryland Court of Appeals; Michigan Supreme Court; Minnesota Supreme Court; Supreme Court of Mississippi; Supreme Court of Missouri; Montana Supreme Court; Nebraska Supreme Court; Supreme Court of Nevada; New Hampshire Supreme Court; New Jersey Supreme Court; New Mexico Supreme Court; New York Court of Appeals; North Carolina Supreme Court; North Dakota Supreme Court; Supreme Court of Ohio; Oklahoma Supreme Court; Oregon Supreme Court; Supreme Court of Pennsylvania; Rhode Island Supreme Court; South Caroline Supreme Court; South Dakota Supreme Court; Tennessee Supreme Court; Texas Supreme Court; Utah Supreme Court; Vermont Supreme Court; Supreme Court of Virginia; Washington Supreme Court; Courts of West Virginia; Wisconsin Supreme Court; Wyoming Supreme Court.

## II. INJURY TO LIVIZ

29.  Liviz has maintained Livz Law Office, d.b.a., since 2012 with his law office located at 200 Central St. (Liviz Law Office), in Lowell, MA 01852.  He is licensed to practice law by the Supreme Judicial Court of the Commonwealth of Massachusetts since 2010 pursuant to S.J.C. Rule 2:21, and presently held law license in good standing with no pending disciplinary actions since 2012.

30.  Liviz has been contacted by his high school friend Jon from California.  Jon's minor daughter has been involved in a dog bite for which she has been receiving medical treatment.  The dog bite occurred on the property of his friend who owns the dog and admits to fault.  The property has premise liability insurance that will provide adequate compensation.  However, because a minor is involved, a settlement cannot be secured without appointment of a guardian *ad litem* and California court approving the appointment and the settlement for judgment.[6]

31.  Liviz does not have a license to practice law in California to help his friend.  Liviz is able to handle the matter; however, he is unable to due to California State Court requiring him to pass the state bar before he can practice law in California.

32.  Liviz has several matters pending in the First Circuit Court of Appeals[7] which he would like to appeal to the Supreme Court of The United States of America ("SCOTUS").

---

[6] *See* California Code of Civil Procedure Ch. 3, § 372(a)(1); "... guardian ad litem so appearing for any minor ... with the approval of the court in which the action or proceeding is pending ... to agree to the order or judgment to be entered therein for or against the ward or conservatee...".
[7] *See e.g. DeBarros v. Areas USA BOS LLC.*, dk. no. 18-cv- 1364 (1st. Cir. 2018); *DeBarros v. Supreme Judicial Court of the Commonwealth of Massachusetts*, dk. no. 18-1565 (1st. Cir. 2018).

33.   Liviz would like to be able to cross state lines, and still have full use and ability to rely on his property right of offering legal assistance to individuals in need of navigating through the legal system.

34.   Liviz is not able to carry his property right outside of the state without loss of its complete value.

35.   Liviz's property right regains value only upon being subjected to "proving" himself by way of taxing and prolonged testing and high fees, and even if "waiving in" is available still having to allow the state to search the condition of his property and pay additional fees without availability for consideration of his indigency status.

36.   Liviz is presently an indigent and due to his financial hardships is unable to carry his property without complete loss of its value upon entering any of the other neighboring states.

37.   Each court outside of Massachusetts jurisdiction, at the very least, requires additional fillings and fee expenditure which Liviz cannot afford financially nor has the time to be able to allocate without being put further in jeopardy in matters concerning his own well being that are presently pending in the courts.

## PART III. CLASS-WIDE INJURY

**I. STATE COURTS**
     A. Summary

### TABLE
(Restrictions on Licensed Attorneys From Non ABA Accredited Law Schools.)[8]

| STATE | CONSTRAINTS |
|---|---|
| **Alaska** | 5 years |
| **Arizona** | 5 years |
| **Colorado** | 5 Years |
| **Florida** | 10 Years |
| **Hawaii** | 5 Years |
| **Kentucky** | 3 Years |
| **Maryland** | Requires Permission |
| **Minnesota** | 5 Years |
| **Missouri** | 3 Years |
| **Nevada** | 10 years |
| **New Hampshire** | 5 years to qualify for motion admission |
| **New Mexico** | 4 Years |
| **New York** | 5 Years |

---

[8] *See* Massachusetts School of Law Bar Eligibility, at http://www.mslaw.edu/accreditation-bar-eligibility/

7

| Oregon | 3 Years |
|---|---|
| Pennsylvania | 5 Years |
| Rhode Island | 5 Years |
| Texas | 3 Years |
| Utah | 10 Years |
| Vermont | Requires Permission |
| Washington | 3 years |
| West Virginia | Requires Permission |

38. All State Supreme Courts discriminate against fully licensed out-of-state practicing attorneys in good standing by charging fees to practice law from lawyers already licensed to practice and in some states even place a time limit before application submission will be allowed. *See* Table *supra*.

39. Some states also discriminate against fully licensed out-of-state practicing attorneys in good standing whose law schools are non-ABA accredited, with some states requiring up to ten (10) years of being in practice before being allowed to sit for their state bar. *See id*.

40. The allegations *infra* within this section, are a preview; however, the claim of relief is the allegations on which this jurist relies upon as the driving points of this civil action.[9]

    B. Nevada

41. Nevada requires non-ABA law graduates seek additional functional equivalency certification in order to apply for admission to the State Bar of Nevada. *See* Supreme Court of Nevada Supreme Court Rules, Rule 51, at no. 2. ("No applicant for a license to practice as an attorney and counselor at law in this state may take the bar examination unless the applicant satisfies (1)(a), 1(c)[10] and (1)(f) above, and such application may be summarily denied.") (Equal Protection Violation.)

42. A fully licensed practicing attorney in good standing who graduated from a non-ABA accredited school has to show maintenance of practice of law at least ten (10) of the past twelve years prior to application . *See id*. Rule 51.1, at 1(a)(2). (Equal Protection Violation.)

43. Applicants who are fully licensed practicing attorneys in good standing of another state, but, who graduated from a non-ABA accredited school bear the burden of proof. *See id*. at no. 1. (Due Process and Equal Protection Violation.)

---

[9] This jurist does not have the man-hour nor finances to go through all fifty states' rules individually; therefore, while the rules for Nevada are looked at more closely, only general allegations are applicable to all the states.

[10] "Have received a degree of bachelor of laws, or an equivalent law degree, from a law school approved by the committee on legal education and admissions to the bar of the American Bar Association, and shall present evidence of the same." *See* Supreme Court of Nevada Supreme Court Rules, Rule 51, at no. 2(c).

44.    Questioning of applicants include whether they defaulted on student loans.  *See id*. Rule 52, at 1(j).  *See also id*. Addendum 1., IV.  at 22. (Privacy Right and Equal Protection Violation.)

45.    Nevada Requires; "[a]n applicant for examination for a license to practice as an attorney and counselor at law in this state shall, as part of the application, be fingerprinted."  *See* Supreme Court of Nevada Supreme Court Rules, Rule  53. at no. 1.  *See also id*. Addendum 1., III. at 10. (Privacy Right  Violation.)

46.    Nevada grants itself to "access against an applicant such further fees or costs as in the opinion of the board are reasonably necessary to conduct investigations, to hold hearings, and to take depositions either within or without the State of Nevada concerning the character of the applicant".  *See id*. Rule 54, at no. 6. (Due Process Violation.)

47.    "Should the actual fees or costs incurred in the conduct of such investigation, hearing or taking of a deposition exceed the amount accessed by the board of bar examiners, the applicant shall pay the excess fees or costs before a final determination is made in the applicant's case upon the entry of a further order therefore by the board."  *See ibid*. at ¶ 2. (Due Process Violation.)

48.    While access costs allows the applicant to petition the supreme court for review (*ibid*), there is no such option made available as of right for indigent applicants seeking complete waiver of fees. (Equal Protection Violation.)

49.    The supreme court decides whether to disturb a board of bar examiners adverse recommendation pursuant to Rule 51 *supra*, without availability of a jury trial to the applicants.  *See id*., Rule 64.  (Due Process Violation.)

50.    " An applicant who has been denied admission with prejudice for failure to meet the necessary character requirements shall not thereafter again be permitted to apply for admission". *See id*., Rule 67.  (Due Process Violation.)

51.    Applicants must demonstrate a good cause standard to receive examination accommodations.  *See id*., Rule 67.5, at no. 1.  (Due Process and Equal Protection Violation.)

52.    Applicants ;"... shall be no right of appeal or review as to the examination or its results." *See id*., Rule 70. (Due Process Violation.)

53.    Applicants who are in exclusively limited positions enjoy benefits not available to other applicants, exampli gratia; "...the president, dean or academic director of The National Judicial College in Reno, Nevada, including the director of The National Center for the Courts and Media" *See id*., Rule 72.5, at no. 1. (Equal Protection Violation.)

54.  Attorneys and Applicants (who are not yet attorneys), are all required to pay $200 (plus) fee to practice law with absence of notice to availability of alternative options for indigent attorneys/applicants.  *See id.*, Rule 74. (Equal Protection Violation.)

55.  Majority of the board of bar examines are appointed by the same court (supreme court) that also serves to review the denials of admissions (*see* ¶ 38 *supra*).  *See id.*, Addendum 1, at no. 2. (Due Process Violation.)

56.  Applicants must provide Department of Motor Vehicle printouts from every state in which the applicant has been licensed to drive in the five years immediately preceding the submission.  *See id.* Addendum 1., II. at no. 11. (Privacy Right Violation.)

57.  Attorneys practicing in other jurisdictions are specifically restricted from practicing within the state.  *See id.*, at no. 16(A). (Privileges & Immunities, Commerce Clause, 1st, 3rd, 4th, 5th, 7th, 8th, 9th, 10th, 14th, Amendments violation.)

58.  Applicants may be required to; " undergo an alcohol and/or substance abuse or dependency assessment by a qualified and certified specialist at the applicant's expense and to submit a written report therefrom."  *See id.*, at no. 25. (Privacy Right, Due Process  and Equal Protection Violation.)

59.  Applicants me be subjected to inquiry  concerning; "... an applicant's mental health or treatment if self-disclosed[11] by the applicant or if the information arises out of inquiries into past or present conduct or behavior which call into question an applicant's ability to practice law in this state." *See id.*, at no. 27, at ¶ 3. (Privacy Right, Due Process  and Equal Protection Violation.)

60.  Applicants may be required to; "... undergo an evaluation by a credit counselor at the applicant's expense and to submit a written report therefrom." *See id.*, at no. 29. (Privacy Right and Due Process Violations.)

61.  Applicants who are successful on the bar examination but are deemed by the C & F Committee[12] to require a formal hearing to review issues such as morale character have to pay a fee of $2,500.  Accommodation based on financial hardship is available; however, "provided that all fees charged must be paid in full before an applicant will be admitted to practice law in this state."  *See id.* at 31(C)(i)(a). (Equal Protection Violation.)

62.  Applicants have a burden of showing requisite moral character and fitness to practice law in the State of Nevada by a standard of proof that is clear and convincing.  *See ibid.* at 31(C)(ii) & (iii).

---

[11] Are the applicants not presumed to be "honest", so all disclosures where necessary are going to be evident by self-disclosure.
[12] *See* Nevada Supreme Court, Supreme Court Rules , Addendum 1., I. at no. 2(A) ("The Committee on Moral Character and Fitness").

63. "If the recommendation as approved by the court is to deny admission with prejudice, the applicant will not be permitted to reapply for admission to practice law in this state at any time thereafter" *See id*. at 31(E), at ¶ 2.

64. Attorneys cannot sit for the bar without going through the application and receiving bar's approval first. *See id*. at 34. (Privileges & Immunities, Commerce Clause, 1st, 3rd, 4th, 5th, 7th, 8th, 9th, 10th, 14th, Amendments violation.)

65. The state bar discriminate against lawyers with limited ability to practice law due a disability which is not completely curable by accommodation; burden is placed the applicant to establish that the granted accommodation(s) are less than adequate or inadequate. *See id*. at 35(D), at ¶ 3. (Discrimination, ADA and § 504 violation.)

66. "Active members admitted to practice in any jurisdiction less than five (5) years shall pay an annual membership fee of $250.00, and active members admitted to practice in any jurisdiction five (5) years or more shall pay $450.00. Inactive dues are $125.00." *See id*. at 48. (Equal Protection, Privileges & Immunities, Commerce Clause, 1st, 3rd, 4th, 5th, 7th, 8th, 9th, 10th, 14th, Amendments violation.)

C. Other States

67. Allegations made in ¶¶ 29 to 56 *supra*, differ slightly from state to state; however, the violations concerning due process, equal protection, and discrimination, as listed in Part V. Relief Sought *infra*, are universal throughout the states.

68. All the states ("Defendants"), with a few states that support reciprocity, restrict practicing attorneys from practicing law without taking part in a brutal bar examination. Attorneys' right to practice in a different state is not given credit within other states.

69. Defendants require not inspection of the property, and subject plaintiffs to application fees and additional procedures before they can use their property. (Due Process Violation).

70. There is lack of availability to a right to a jury trial. (Due Process Violation.)

71. Defendants do not offer a waiver of fees for indigent attorneys, and there is difference in the annual due based on years of practice. (Equal protection violation.)

72. Defendants have fee reduction for state based attorneys. (Equal protection violation.)

73. Attorneys who have been disciplined publically, are permanently marked by such discipline that is made publically available, even in cases where there has been full rehabilitation. (Const. Amends. violation.)

74. Such public stain hurts the attorneys who in many cases are more experienced and more adopt at practice of law than their non-disciplined counterparts. (Const. Amends. violation.)

## II. FEDERAL COURTS

75.   Federal district courts demand a fee and other requirements before attorneys are allowed to practice before the court.

76.   Each Circuit of Federal Appeals Court demands a separate fee and separate admission prior to attorney being able to practice before the court.

77.   SCOTUS requires three year of practice before allowing attorneys to practice before the court.  (Equal protection violation.)

78.   SCOTUS requires signature of two members who are already licensed to practice before the court to sign new applicants petition to join the SCOTUS bar. (Equal protection violation.)

79.   A licensed attorney has to pay unrealistic fees to be able to practice in multiple jurisdictions; inter-state practice of law is limited to the rich. (Equal protection violation.)

## PART IV - CONSTITUTIONAL BASIS

80.   If there is any conflict between provisions of Constitution and of Amendments, Amendments must control. *See Schick v United States*, 195 US 65 (1904).

## I. PROPERTY RIGHT AND RIGHT TO PRIVACY

81.   "The right of an attorney and [counselor], acquired by his admission, to appear for suitors, and to argue causes, is not a mere indulgence -- a matter of grace and favor -- revocable at the pleasure of the court, or at the command of the legislature. It is a right of which he can only be deprived by the judgment of the court, for moral or professional delinquency." *See Ex Parte Garland*, 71 U.S. 333, at no. 7 (1867).

82.   Property is everything which has an exchangeable value, and the right of property includes the power to dispose of it according to the will of the owner. Labor is property, and as such merits protection. The right to make it available is next in importance to the rights of life and liberty. It lies to a large extent at the foundation of most other forms of property, and of all solid individual and national prosperity." *See Slaughter-House Cases*, 83 U.S. 36, at [***166]  (1872).

83.   "Due protection of the rights of property has been regarded as a vital principle of republican institutions. 'Next in degree to the right of personal liberty,' Mr. Broom in his work on Constitutional Law says, 'is that of enjoying private property without undue interference or molestation.'" *See Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, at [*236] (1897).

84.   Personal rights are protected by the first eight Amendments against state action. *See Twining v. N.J.*, 211 U.S. 78, at [**] (1908).

85.  Attorneys' primary trade is the ability to provide legal advice as service for a fee; a form of commercial speech that cannot be censored pursuant to the First Amendment's right to freedom of speech and expression.  Supreme Court held states may  regulate commercial speech but they may not completely suppress it.  *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748. at [****43] (1976).  "... where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both." *See id*. at [3].

86.  "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' The 'basic purpose of this Amendment," our cases have recognized, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *See Carpenter v. United States*, 138 S. Ct. 2206, at  [**517] (2018).

87.  "When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.'"  *See id.  See also* Due Process *infra*.

88.  "...individual liberty cannot be invaded unless a compelling state interest is clearly shown." *See Scull v. Virginia ex rel. Committee on Law Reform & Racial Activities*, 359 U.S. 344 (1959)

## II. FREEDOM OF SPEECH, EXPRESSION AND ASSOCIATION

89.  "We recognize the importance of leaving States free to select their own bars, but it is equally important that the State not exercise this power in an arbitrary or discriminatory manner nor in such way as to impinge on the freedom of political expression or association. A bar composed of lawyers of good character is a worthy objective but it is unnecessary to sacrifice vital freedoms in order to obtain that goal. It is also important both to society and the bar itself that lawyers be unintimidated -- free to think, speak, and act as members of an Independent Bar."  *See Konigsberg v. State Bar of Cal*., 353 U.S. 252 (1957).

90.  Attorneys' legal speech, even if unprofessional, pursuant to constitutional right to speak freely, cannot be disciplined.  *See In re SAWYER*, 360 U.S. 622 (1959) (Court overturning one year suspension because the speech was not shown to interfere with administration of justice.)

91.  "Broad prophylactic rules in the area of free expression are suspect. ... only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms. " *See NAACP v. Button*, 371 U.S. 415 (1963).

92.  "Thus it is no answer to the constitutional claims asserted by petitioner to say, as the Virginia Supreme Court of Appeals has said, that the purpose of these regulations was

13

merely to insure high professional standards and not to curtail free expression. For a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *See id.* at [*439].

93. Attorneys' primary trade is the ability to provide legal advice as service for a fee; a form of commercial speech that cannot be censored pursuant to the First Amendment's right to freedom of speech and expression. Supreme Court held states may regulate commercial speech but they may not completely suppress it. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748. at [****43] (1976). However, there is a good argument that even such limited regulation is against public policy; "[g]eneralizing, society also may have a strong interest in the free flow of commercial information." *See id*, at [****29] (1976)

94. "Free trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." Thomas was convicted for delivering a speech in connection with an impending union election under National Labor Relations Board auspices, without having first registered as a "labor organizer." He urged workers to exercise their rights under the National Labor Relations Act and join the union he represented. This Court held that the registration requirement as applied to his activities was constitutionally invalid." *See NAACP v. Button*, 371 U.S. 415, at [*437] (1963) (Internal quotations referencing to *Thomas v. Collins*, 323 U.S. 516 (1945) omitted.)

95. "...even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *See Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293 (1961). (Internal quotations and citation omitted.)

96. "If there is an internal tension between proscription and protection in the statute, we cannot assume that, in its subsequent enforcement, ambiguities will be resolved in favor of adequate protection_ of First Amendment rights." *See NAACP v. Button*, 371 U.S. 415, at [****38] (1963).

97. Attorneys are afforded more rights pursuant commercial speech than political expression and association. *See In re Primu*s, 436 U.S. 412, at [17] (1978).

98. "The choice between the dangers of suppressing information and the dangers arising from its free flow was seen as precisely the choice "that the First Amendment makes for us." *See Bates v. State Bar of Ariz.*, 433 U.S. 350, at [**2700] (1977).

99. "State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *See NAACP v. Button*, 371 U.S. 415, at [*439] *infra* (1963).

100. Economically motivated expression or association is not disqualified from protection under First Amendment. *See International Union, United Auto., etc. v National Right to Work Legal Defense & Education Foundation, Inc.*, 192 US App DC 23 (D.C. Cir. 1978).

14

## III. DUE PROCESS & EQUAL PROTECTION

101.  Life, liberty, and property are forbidden to be taken "without due process of law," and "equal protection of the laws" is guaranteed to all. Life is the gift of God, and the right to preserve it is the most sacred of the rights of man. Liberty is freedom from all restraints but such as are justly imposed by law. Beyond that line lies the domain of usurpation and tyranny. *See Slaughter-House Cases*, 83 U.S. 36 (1872).

102.  "For many decades, the question of the rights protected by the  Fourteenth Amendment against state infringement has been analyzed under the Due Process Clause of that Amendment and not under the Privileges or Immunities Clause." *See McDonald v. City of Chicago*, 561 U.S. 742 (2010) (declining to disturb *Slaughter-House*).

103.  "... teacher's relation to the effective exercise of the rights which are safeguarded by the Bill of Rights and by the Fourteenth Amendment, inhibition of freedom of thought, and of action upon thought, in the case of teachers brings the safeguards of those amendments vividly into operation. Such unwarranted inhibition upon the free spirit of teachers . . . has an unmistakable tendency to chill that free play of the spirit which all teachers ought especially to cultivate and practice..." *See Shelton v. Tucke*r, 364 U.S. 479, at [\*\*\*237] (1960) (Internal quotations omitted.) (*See* Due Process & Equal Protection *infra*.)

104.  "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. And A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." *See SCHWARE v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, at [\*239] (1957). (Internal citations omitted.)

105.  Defendants violate attorney-client privilege and also violate the due process right of clients to chose of counsel, and because counsel also has a "... vital interest at stake: the constitutional right to retain counsel of their own choosing. *See Kaley v. United States*, 571 U.S. 320 (2014)   "...the wrongful deprivation of choice of counsel is 'structural error,' immune from review for harmlessness, because it 'pervades the entire trial.'" *See id.,* at [\*337] (2014).

## IV. PRIVILEGES & IMMUNITIES

106.  "The Privileges and Immunities Clause  of Art. IV, § 2, cl. 1, provides: 'The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.' The Clause  thus establishes a norm of comity without specifying the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment." *See Austin v. New Hampshire*, 420 U.S. 656 (1975).

15

107. Privileges and Immunities Clause of the U.S. Const., art. IV, § 2 does not protect against unconstitutional disparity between residents and nonresident in the state license system without a need for equality to the maintenance or well-being of the union.  *See Baldwin v. Fish & Game Comm'n*, 436 U.S. 371 (1978) (Holding [e]quality in access to state elk was not basic to the maintenance or well-being of the union, and whatever rights or activities were fundamental under the Privileges and Immunities Clause, elk hunting by nonresidents was not one of them.)

108. "...it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness...".  *See id*. at [**1859] (Quoting Hon. Justice Field from *Paul v. Virginia*, 8 Wall. 168, 180 (1869).)

109. "This consideration applies equally to the protection of individual liberties, and to the maintenance of our constitutional federalism.  The Privileges and Immunities Clause, by making noncitizenship or nonresidence an improper basis for locating a special burden, implicates not only the individual's right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept of federalism." *See Austin v. New Hampshire*, 420 U.S. 656 (1975). (Internal citations omitted.)

110. It is important to recognize that "... fee as a tax upon a particular business or trade, carried on in a particular mode, rather than a discrimination against traders from other States" is acceptable.  *See id*. (Internal quotes omitted.)  "[T]he argument advanced in favor of tax is that the ultimate burden it imposed is not more onerous in effect".  *See id*. at [*666].

111. It becomes obvious, what was previously in-obvious, the Privileges and Immunities Clause is the bedrock of holding the present day nation-wide state attorney regulatory schemes a nationwide violation of The Privileges and Immunities Clause that is prevalent with discrimination of out-of-state citizens - Injunctive Relief Warranted.

112. It is of interest to mention there is obvious disparate treatment of residents and nonresidents that attending state accredited but ABA non-accredited law schools; this jurist has to be in practice for ten (10) years before he is allowed to practice law.

113. "With respect to those 'privileges 'and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.  *See Baldwin v. Fish & Game Comm'n*, 436 U.S. 371 (1978).

114. "State residents can enjoy benefits of common property within the state such as availability of wildlife resource; however, "...the States may not interfere with the "right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of habeas corpus; to institute and maintain actions of any kind in the courts of the state; to take, hold and dispose of property either real or personal..." *See id*. at[***366].

**V. COMMERCE CLAUSE**

16

115.    "We have already held that the dormant Commerce Clause is applicable to activities undertaken without the intention of earning a profit... In determining whether the transportation of persons is 'Commerce,' we noted that 'it is immaterial whether or not the transportation is commercial in character. ... the history of our Commerce Clause jurisprudence has shown that even the smallest scale discrimination can interfere with the project of our federal Union. *See Camps Newefound/Owatonna v. Town of Harrison*, 520 U.S. 5654 (1997).

116.    It follows, that a person should be able to travel free, and uninhibited, with freedom of speech described *supra*. "Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce." *See Polish Nat'l Alliance, v. NLRB*, 322 U.S. 643, at [****11] (1944).

117.    It is of interest, that the state may pass legislature to "tax" on the "privilege of doing business" that concerns entity engaged in interstate commerce. *See Complete Auto Transi, Inc. v. Brady*, 430 U.S. 274 (1977). However, presently, the fee is in a form of granting a right to practice a trade, which discriminates against outside attorneys who now have to pay more than once (in multiple jurisdictions) to be able to practice their trade inter-state. Moreover, even if the annual fee is justified as a "tax", there is substantial burden which impedes the privilege of doing business in-state by out-of-state licensed attorneys in good standing. *See Complete Auto Transit, inc. v. Brady*, 430 U.S. 274 (1977).

## PART V - CONGRESSIONAL SUPPORT

## I. REGULATION PURSUANT TO COMMERCE POWER

118.    "The power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce ." *See United States v. Darby*, 312 U.S. 100, at 118 (1941).

119.    The Commerce Clause, pursuant to U.S. Const., art. I, § 8, cl. 3 empowers Congress to regulate commerce among several states; regulation of commodity and persons engaged in a trade without infringement of the states' U.S. Cons. amend X rights by abstaining from regulating the state itself. *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981) (Court upheld Act regulating minors.)

120.    There are; "... three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the

instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.  Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i. e.*, those activities that substantially affect interstate commerce..." *See United States v. Lopez*, 514 U.S. 549 (1995). (Internal citations omitted.)

121. "The 'enterprise concept' of coverage is clearly within the power of Congress under the Commerce Clause." *See Maryland v. Wirtz*, 392 U.S. 183 (1968). "... an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which - [falls in any one of four listed categories] [13] ...". *See id.*

## II. NATIONAL LABOR RELATIONS ACT

122. "Experience has further demonstrated that certain practices by some labor organizations, their officers, and members have the intent or the necessary effect of burdening or obstructing commerce by preventing the free flow of goods in such commerce through strikes and other forms of industrial unrest or through concerted activities which impair the interest of the public in the free flow of such commerce. The elimination of such practices is a necessary condition to the assurance of the rights herein guaranteed." *See* 29 U.S.C., § 151, at ¶ 4.

123. "The first amendment's protection in the legal aid context extends not only to the organization itself, but also to its staff, members, contributors and others who affiliate with it. Any law that adversely affects the exercise of first amendment freedoms in connection with legal aid activity must be necessary to correct a serious and substantive evil and must be precisely drawn to serve that purpose.  Moreover, any law affecting  such freedoms must prohibit actual, not potential evils before it may constitutionally be applied." *See International Union, United Auto., etc. v. National Right to Work Legal Defense & Education Foundation, Inc.*, 590 F. 2d 1139 (D.C. Cir. 1978) (Internal citations omitted.)

124. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title." *See* 29 U.S.C., § 157.

125. "The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in cases under title 11, or receivers." *See* 29 U.S.C., § 152(1).

---

[13] State Bar falls under *public agency* activity.  *See* 29 U.S.C., § 201(s)(1)(C).  *See also* Definition of Public Agency at ¶ 136 *infra*.

126. "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act [45 U.S.C. 151 et seq.], as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." *See* 29 U.S.C., § 152(2).

127. "The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act [45 U.S.C. 151 et seq.], as amended from time to time, or by any other person who is not an employer as herein defined." *See* 29 U.S.C., § 152(3).

128. "The term 'representatives' includes any individual or labor organization." *See* 29 U.S.C., § 152(4).

129. "The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." *See* 29 U.S.C., § 152(5).

130. "The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country." *See* 29 U.S.C., § 152(6).

131. "The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." *See* 29 U.S.C., § 152(7).

132. "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment,

19

regardless of whether the disputants stand in the proximate relation of employer and employee." *See* 29 U.S.C., § 152(9).

133.  "The term "professional employee" means—**(a)**any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes; or **(b)** any employee, who (i) has completed the courses of specialized intellectual instruction and study described in clause (iv) of paragraph (a), and (ii) is performing related work under the supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a)." *See* 29 U.S.C., § 152(12)(a)-(b).

134.  It shall be an unfair labor practice for a labor organization or its agents—
**(1)** to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances; **(2)** to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership..." *See* 29 U.S.C., § 158(b)(1)-(3).

135.  It shall be an unfair labor practice for an employer to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—**(A)** forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) **(B)** forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: ..." *See* 29 U.S.C., § 158(b)(4)(i)(A)-(B)

20

136. It shall be an unfair labor practice for a labor organization or its agents "to require of employees covered by an agreement authorized under subsection (a)(3) the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory under all the circumstances. In making such a finding, the Board shall consider, among other relevant factors, the practices and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;" *See* 29 U.S.C., § 158(b)(5).

137. This *jurist* was forced to pay a fee for his license or face administrative suspension. The states are taking part in unlawful practice that burdens the legal trade. As a result, access to justice remains little to none to the average "Joe".

138. This *jurist* nor any other attorney is able to travel with their property or rely upon their trade because of ongoing unlawful disparate treatment to out-of-state professionals. Being fully licensed and are in good standing makes no difference; licensed and experienced attorneys are treated like new graduates, and are subjected to extensive and expensive procedure without probable cause to do so.

## II. FAIR LABOR STANDARDS AMENDMENT ACT

139. Fair Labor Standards Act ("FLSA") was passed in 1938. Due to wartime, its effects were postponed, with subsequent promulgation of Fair Labor Standards Amendment Act ("FLSAA") of 1949. *See* 29 U.S.C. §§ 201 - 209.[14]

   A. Definitions

140. "'Person' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *See* 29 U.S.C., § 203(a).

141. "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *See* 29 U.S.C., § 203(b).

142. "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." *See* 29 U.S.C., § 203(d).

143. "'Employ' includes to suffer or permit to work." *See* 29 U.S.C., § 203(g).

144. "'Industry' means a trade, business, industry, or other activity, or branch or group thereof, in which individuals are gainfully employed. *See* 29 U.S.C., § 203(h).

---

[14] *See* Pub. L. 81-393, 63 Stat. 910 (1949)

145.  "'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."  *See* 29 U.S.C., § 203(i).

146.  "'Public agency' means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; or any interstate governmental agency."  *See* 29 U.S.C., § 203(x).

147.  "'Enterprise' means the related activities performed (*either through unified operation or common control*) by any person or persons for a common business purpose ... but shall not include the related activities performed for such enterprise by an independent contractor ..." *See Maryland v. Wirtz*, 392 U.S. 183, at note. 27, at ¶ 2. (Boom.) (Clarifying 29 U.S.C., § 203 (r).)

### B. Prima Facie Evidence

148.  " ... no provision of this chapter shall excuse any common carrier from its obligation to accept any goods for transportation; and except that any such transportation, offer, shipment, delivery, or sale of such goods by a purchaser who acquired them in good faith in reliance on written assurance from the producer that the goods were produced in compliance with the requirements of this chapter..."  *See* 29 U.S.C., § 215(a)(1).

149.  "... it shall be unlawful for any person- to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter..." *See* 29 U.S.C., § 215(a)(3).

150.  "For the purposes of subsection (a)(1) proof that any employee was employed in any place of employment where goods shipped or sold in commerce were produced, within ninety days prior to the removal of the goods from such place of employment, shall be prima facie evidence that such employee was engaged in the production of such goods." *See* 29 U.S.C., § 215(b).

### C. Protections

151.  "No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has - objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment)." *See* 29 U.S.C. § 218c(a)(5)

152. Pursuant to 29 U.S.C. § 218c(b)(1) a Complaint has to be initiated with the Secretary of Labor within 180 days (15 U.S.C. § 2087(b)(1). However, pursuant to 29 U.S.C. § 218c(b)(2), "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement." Thus, pursuant to due process and interstate commerce clause, a Complaint may be filed directly with the federal court.

## III. FAAAA

### A. Transportation Policy - 49 U.S.C. § 13101

**(A)** To ensure the development, coordination, and preservation of a transportation system that meets the transportation needs of the United States, including the United States Postal Service and national defense, it is the policy of the United States Government to oversee the modes of transportation and in overseeing those modes; (A) to recognize and preserve the inherent advantage of each mode of transportation; (B) to promote safe, adequate, economical, and efficient transportation; (C) to encourage sound economic conditions in transportation, including sound economic conditions among carriers; (D) to encourage the establishment and maintenance of reasonable rates for transportation, without unreasonable discrimination or unfair or destructive competitive practices; (E) to cooperate with each State and the officials of each State on transportation matters; (F) and to encourage fair wages and working conditions in the transportation industry. *See* 49 U.S.C. § 13101(a)(1)(A-F) (emphasis added.)

153. This part shall be administered and enforced to carry out the policy of this section and to promote the public interest. *See* 49 U.S.C. § 13101(b) (emphasis added.)

### B. Definitions

154. "The term "**control**", when referring to a relationship between persons, includes actual control, legal control, and the power to exercise control, through or by - (A) common directors, officers, stockholders, a voting trust, or a holding or investment company, or (B) any other means." See 49 U.S.C. § 13102(5)(A & B) (emphasis added.)

155. "The term "**person**", in addition to its meaning under [1 U.S.C. § 1] [15] includes a trustee, receiver, assignee, or personal representative of a person." *See* 49 U.S.C. § 13102(18) (emphasis added.)

---

[15] In determining the meaning of any Act of Congress, unless the context indicates otherwise - words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular; words importing the masculine gender include the feminine as well; words used in the present tense include the future as well as the present; the words "insane" and "insane person" shall include every idiot, insane person, and person non compos mentis; the words "**person**" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals; "**officer**" includes any person authorized by law to perform the duties of the office; "signature"

23

156. "The term "**State**" means the 50 States of the United States and the District of Columbia." *See* 49 U.S.C. § 13102(21) (emphasis added.)

157. "The term "**transportation**" includes - (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, **property**, facility, **instrumentality**, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." *See* 49 U.S.C. § 13102(23) (emphasis added.)

158. "Federal law--including 49 U.S.C.S. § 14501(c)(1), which generally prohibited state from enacting any law related to motor carrier's price, route, or service, with respect to transportation of property--held to pre-empt two Maine provisions that purported to regulate delivery of tobacco to customers within state." *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008). (Finding imposition of civil liability laws were pre-empted because they related to carrier service which had a significant and adverse impact on the congressional goal of precluding state regulation in lieu of competitive market forces.)

159. "State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." *See* 49 U.S.C. § 14501(c)(1). *See also* 49 U.S.C. § 41713(b)(4)(A).

160. States may not pass laws that force and effect fees to interstate services is pre-empted by FAAAA. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008). *See* similarly *Morales v. TWA*, 504 U.S. 374 (1992) (Court held state federal law pre-empts the state from preventing out-of-state un-licensed tobacco retailers from shipping and selling within the state.)

161. "Court determined (1) that [s]tate enforcement actions having a connection with, or reference to, carrier rates, routes, or services' are pre-empted; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives. The Court described Congress' overarching goal as helping ensure transportation rates, routes, and services that reflect maximum reliance on competitive

---

or "subscription" includes a mark when the person making the same intended it as such; "oath" includes affirmation, and "sworn" includes affirmed; "writing" includes printing and typewriting and reproductions of visual symbols by photographing, multigraphing, mimeographing, manifolding, or otherwise. *See* 1 U.S.C. § 1 (emphasis added.)

market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality." *See Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, at [4] (2008) (Internal citations and emphasis omitted.)

## IV. FEDERAL TRADE COMMISION ACT

162.  "Congress enacted § 5 of the Federal Trade Commission Act to combat in their incipiency trade practices that exhibit a strong potential for stifling competition. In large measure the task of defining 'unfair methods of competition' was left to the Commission." *See Ftc v. Texaco*, 393 U.S. 223 (1968).

163.  "The legislative history shows that Congress concluded that the best check on unfair competition would be "an administrative body of practical men ... who will be able to apply the rule enacted by Congress to particular business situations, so as to eradicate evils with the least risk of interfering with legitimate business operations." *See Ftc v. Texaco*, 393 U.S. 223, at [*226] (1968).

## V. SHERMAN ACT

164.  Congress enacted the Sherman Antitrust Act in 1890.  *See* 15 U.S.C., § 1 et seq.

165.  Section 1 of the Sherman Act, 15 U. S. C. § 1, makes unlawful every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States.  And § 2, 15 U. S. C. § 2, makes it unlawful to monopolize, [****17] or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States... We may assume also, without deciding, that Congress could, in the exercise of its commerce power, prohibit a state from maintaining a stabilization program like the present because of its effect on interstate commerce." Quoted from *Parker v. Brown*, 317 U.S. 341 (1943) (internal quotations omitted).

166.  "The fact that the State Bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anticompetitive practices for the benefit of its members." *See Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) (court did not find there was price fixing, but failed to address the gate-keeping rules of the bar which is part of this action and prevents practice of law all together).

167.  *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977) relied upon *Parker v. Brown*, 317 U.S. 341 (1943) ; however, the court failed to recognize and differentiate the difference between a state's ability to regulate unlicensed attorneys and licensed attorneys coming into the state to practice their trade - the later has not been presented yet.

168.  The individual states' bar require various fees, tests, and/or other methods, that prevent in-state competition from out-of-state licensed attorneys; activities that play an important part on commercial intercourse, and exert a restraint on commerce through their anticompetitive activities.

25

## VI. CLAYTON ACT

### A. Definitions

169.  "*Antitrust laws*, as used herein, includes the Act entitled  An Act to protect trade and commerce against unlawful restraints and monopolies, approved July second, eighteen hundred and ninety; sections seventy-three to seventy-six, inclusive, of an Act entitled An Act to reduce taxation, to provide revenue for the Government, and for other purposes, of August twenty-seventh, eighteen hundred and ninety-four; an Act entitled An Act to amend sections seventy-three and seventy-six of the Act of August twenty-seventh, eighteen hundred and ninety-four, entitled An Act to reduce taxation, to provide revenue for the Government, and for other purposes, approved February twelfth, nineteen hundred and thirteen; and also this Act.  *See* 15 U.S.C., § 12(a), at ¶ 1.

170.  "*Commerce*, as used herein, means trade or commerce among the several States and with foreign nations, or between the District of Columbia or any Territory of the United States and any State, Territory, or foreign nation, or between any insular possessions or other places under the jurisdiction of the United States, or between any such possession or place and any State or Territory of the United States or the District of Columbia or any foreign nation, or within the District of Columbia or any Territory or any insular possession or other place under the jurisdiction of the United States: *Provided*, That nothing in this Act contained shall apply to the Philippine Islands."  *See* id., at ¶ 2.

171.  "The word *person* or *persons* wherever used in this Act shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country."  *See ibid.*

172.  Antitrust laws not applicable to labor organizations; "[t]he labor of a human being is not a commodity or article of commerce."  *See* 15 U.S.C., § 17.  However attorneys do not rely on their labor to earn their income; knowledge of law has an independent property value that retains its value and can be sold for a price by third parties to others, exampli gratia, attorney can create a memorandum that can be sold to others and re-sold as property by new owners.

### B. Law

173.  "Section 4 of the Act, Title 15, Sec. 15, U.S.C.A., provides that any person who shall be injured in his business or property, as a result of violation of the Act, may recover damages. *See Roseland v. Phister Mfg. Co*. 125 F. 2d 417, at [**4] (7th. Cir. 1942).

174.  "It signifies ordinarily that which habitually busies, or engages, time, attention or labor, as a principal serious concern or interest. In a somewhat more truly economic, legal and industrial sense, it includes that which occupies the time, attention, and labor of men for the purpose of livelihood or profit, - persistent human efforts which have for their end pecuniary reward. It denotes "the employment or occupation in which a person is engaged

to procure a living." *See Roseland v. Phister Mfg. Co.* 125 F. 2d 417, at [**5] (7th. Cir. 1942).

175. "Clayton Act authorizes the recovery of treble damages for injuries to a person's "business or property" by reason of violations of the federal antitrust laws.  See 15 U.S.C., § 15.

176. "... any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  *See* 15 U.S.C., § 17(a).

177. "It is the source of injury, not the character of property or business injured, which constitutes the test of recovery." *See Roseland v. Phister Mfg. Co.* 125 F. 2d 417, at [**5] (7th. Cir. 1942).  "... as a matter of law from the face of the complaint that plaintiff has incurred no damage. What the situation may be after the proof has been submitted cannot be foreseen.  *See id.*, at [**9] (Appeals court reversing Judgment of Dismissal.)

178. "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue". *See* 15 U.S.C., § 26.

179. Legislative history, pursuant to 15 U.S.C., § 15a, limits recovery to damages to business or property.  *See Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972).

## PART V - RELIEF SOUGHT

## I. ALLEGATIONS APPLICABLE TO ALL COUNTS

180. All paragraphs supra and hereafter are re-alleged as if stated herein in paragraphs hereafter.

181. Defendants are maintaining state based monopolistic anticompetitive conduct.

182. Defendants threaten attorneys failure to pay will result in administrative suspension to practice law.  Attorneys comply to pay fees at the threat of state property taking.

183. This type of conduct violated attorneys' constitutional rights and violates Congressional Acts designed to Counter such anticompetitive conduct.

27

184. Defendants conduct harms the people of this nation and prevents beneficial to the people competition in the legal trade.

185. Defendants conduct harms the people by limiting accessibility to more diverse and readily available legal options.

186. Nations interstate commerce is harmed by Defendants conduct which also results in diminished capacity and grown of national economy.

187. Defendants discriminate against out-of-state licensed attorneys which in turn harms intrastate consumers. More than two people within each state have entered into an agreement to maintain such unlawful conduct.

188. Defendants' agreement is based disparate animus toward out-of-state licensed attorneys that is more discriminatory toward out-of-state licensed attorneys who graduated from non-ABA accredited law schools.

189. Defendants engaged in unlawful intentional discrimination which deprived this *jurist* and Class Members their Civil Right/s.

190. Defendants who worked for, under, or with the state knew, or should have known, states' conduct is unlawful, and having knowledge of the wrongs conspired to discriminate against out-of-state licensed attorneys, and/or having power to prevent or aid in preventing the commission of the same, neglected or refused to so.

191. As result of defendants discriminatory and unlawful conduct in violation of anticompetitive antitrust laws, access to justice to state's citizens is less readily available and less affordable.

192. The market concerns property right of license to practice law, which immediately loses its value upon entry into neighboring states. This anticompetitive unlawful restrain upon the transport of good is readily forceable and traceable to anticompetitive contact of the states.

## II. COUNTS A(#); B(#); C(#)

A(#) represents this *jurist*; B(#) represents national attorney class from ABA accredited schools; and C(#) represents national attorney class from non-ABA accredited schools.[16]

---

[16] There are three classes: Class A (this jurist); Class B (licensed attorneys who graduated from ABA accredited schools; and Class C(licensed attorneys who graduated from non-ABA accredited schools), at 28 separate counts claimed by each class, gives a combined total of 84 counts. *Exampli gratia*; Count B.(12) represents the twelfth claim pursuant to § 1983 for deprivation of Freedom of Speech claimed by the Class of Attorneys who graduated from ABA accredited school.

1.   Violation of Privileges and immunities Clause by Discriminating against out-of-state licensed attorneys.

2.   Violation of 15 U.S.C., § 1 of the Sherman Antitrust Act.  Violations resulting from unlawful trying of the licensed attorney to practice law, whose goods are nullified upon entry into neighboring state.

3.   Violation of 15 U.S.C., § 2 of the Sherman Antitrust Act. States anticompetitive action created unlawful intra-state Monopolization.

4.   Violation of the National Labor Relations Act.

5.   Violation of Fair Labor Standards and Fair Labor Standards Amendment Act.

6.   Violation of the FAAAA.

7.   Violation of the Federal Trade Commission Act.

8.   Violation of The Clayton Act by restraint to trade.

9.   Violation of 42 U.S.C, § 1981.[17]

10.   Violation of 42 U.S.C, § 1981(a)(1).

11.   Violation of 42 U.S.C, § 1982.

12.   Violation of 42 U.S.C, § 1983 Freedom of Speech.

13.   Violation of 42 U.S.C, § 1983 Equal Protection.

14.   Violation of 42 U.S.C, § 1983 Deprivation of Property Right.

15.   Violation of 42 U.S.C, § 1985.

16.   Violation of 42 U.S.C, § 1986.

17.   Fifth Amendment Due Process violation.

18.   Fifth Amendment Equal Protection violation.[18]

---

[17] Jurist seeks redress against non-judicial administrative conduct to which judicial immunity does not apply.

[18] *See U.S. v. Windsor*, 570 U.S. 744 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.")

19.    Fourteenth Amendment Due Process violation.

20.    Fourteenth Amendment Equal Protection violation.

21.    Violation of Fair Debt Collection Practices Act.[19]

22.    Deprivation of Right to Privacy.

23.    Deprivation of Right to a Jury Trial.

24.    Violation of Common Law Monopolization/Unlawful Business Practices.

25.    Violation of State/Common Law Anti-Discrimination Act.

26.    Violation of Art. I, § 8

27.    Violation of Art. IV, § 1

28.    Violation of Art. IV, § 2 at ¶ 1

## III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his behalf and on behalf of the putative classes pray that the Court declare, adjudge and decree the following:

a.    Asserting federal jurisdiction, on one or more of the aforementioned alleged reasons, so that the claim of action against the Defendants can be heard in federal court.

b.    That this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to plaintiffs' claims for injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief, and declaring plaintiffs as representatives of the Classes and their counsel as counsel for the Classes;

c.    That the conduct alleged herein constitutes unlawful tying, monopolization, in violation of the common law, and Sections 1 and 2 of the Sherman Antitrust Act;

d.    That the conduct alleged herein is in violation of the Unfair Competition Law and appropriate restitutionary and other injunctive relief be granted pursuant to this law;

e.    That the conduct alleged herein is in violation of the National Labor Relations Act; and appropriate damages and injunctive relief be granted pursuant to this law;

----

[19] *See* 15 U.S.C. § 1692 et seq. ("FDCPA")

f.  That the conduct alleged herein is in violation of the Fair Labor Standards Act and Fair Labor Standards Amendment Act; and appropriate damages and injunctive relief be granted pursuant to this law;

g.  That the conduct alleged herein is in violation of the FAAAA; and appropriate damages and injunctive relief be granted pursuant to this law;

h.  That the conduct alleged herein is in violation of the Federal Trade Commission Act; and appropriate damages and injunctive relief be granted pursuant to this law;

i.  That the conduct alleged herein is in violation of the Clayton Act; and appropriate damages and injunctive relief be granted pursuant to this law;

j.  For an order permanently restraining and enjoining Defendants from continuing the unfair and anticompetitive activities alleged herein;

k.  That plaintiffs and the Classes are entitled to damages, penalties and other monetary relief provided by applicable law, including treble damages;

l.  That plaintiffs and the Classes recover their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest;

m.  For an order requiring full restitution of all funds acquired from Attorneys' by Defendants unfair business practices, including disgorgement of revenues and/or profits;

n.  Awarding plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

o.  That plaintiffs and the Classes are granted such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

p.  Declaratory Judgment: 1) unlawful to restrict licensed out-of-state attorneys to practice law within other states; 2) unlawful to examine or inspect attorneys' ability to practice law who is licensed to practice law in good standing by one of the other states without probable cause and a warrant; 3) attorneys have right to a jury trial should they disagree with the state on issues concerning right to practice law of licensed attorneys.

q.  Money Judgment for damages, injury, violations, attorney fees, costs, and other relief pursuant to call of actions.

r.  For such other and further relief, to cure injury/s and legal costs, as the Court may deem just, proper, and appropriate.

**III. JURY DEMAND**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

The aforementioned is true, accurate and correct, to the best of my knowledge, recollection, and interpretation.  Signed under pains and penalty of perjury on this Twenty-First day of December in the year of 2018 of our Lord.

_____
Chief Jurist Ilya Liviz D.L.D.


Date: 12/21/2018



**FOR THE PEOPLE**
by
***JURIST* FOR JUSTICE**
of
**UNITED STATES OF AMERICA**

Respectfully submitted,


*/s/* Chief Jurist Ilya Liviz D.L.D.
National Academy for Jurists
Advocating for Civil Rights & Civil Liberties
LIVIZ LAW OFFICE
200 Central St., No. 1
Lowell, MA 01852
www.Liviz.com
www.NAFJ.US
1 (978) 606-5326
ilya.liviz@gmail.com
B.B.O.# 686409

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and regular email to the department of justice and SCOTUS.

Dated: 12/21/2018                /s/ Chief Jurist Ilya Liviz D.L.D.
                                 National Academy for Jurists
                                 Civil Rights & Civil Liberties Advocate

## ***JURIST* FOR JUSTICE OATH**

"I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all." *See* 4 U.S.C. § 4.

Dated: 12/21/2018                /s/ Chief Jurist Ilya Liviz D.L.D.
                                 Civil Rights & Civil Liberties Advocate